CIACCIO, Judge.
This case arises from an altercation between a Mississippi River Bridge Authority (MRBA) police officer and plaintiff, Glenn Price. On Friday, August 28, 1987, Price, his wife, Debra and their minor son, Christopher were in a line of traffic on Camp Street at approximately 5:15 p.m., waiting to cross the Greater New Orleans Mississippi River Bridge. At that time, defendant Mark Poche, a MRBA police officer, was assigned to traffic control on the bridge’s Melpomene Street entrance ramp. While directing traffic, Poche noticed Price pouring water into the radiator of his car which had overheated. Because traffic over the bridge was heavy during rush hour, Poche directed Price to remove his vehicle from the line of traffic to prevent it from later stalling on the bridge. Price informed Poche that he thought the car could make it across the bridge. Poche again directed Price to remove his vehicle from the line of traffic. Mrs. Price became upset with Poche’s order and exited the vehicle. She approached Poche and a verbal exchange between the two of them ensued. Mrs. Price then left the scene and went to use a telephone to call her employer. Meanwhile, Price approached Poche and asked to speak to Poche’s supervisor. Poche ordered Price to return to his car and summoned his supervisor, Corporal Glenn Killeen, by radio. Shortly thereafter, Killeen arrived. While Christopher Price remained in his father’s car, Price approached Killeen, inquiring as to how he could get across the bridge. As Price was discussing the matter with Killeen, Poche interrupted and threatened Price, resulting in a verbal confrontation between Price and Poche. Poche then, without warning, struck Price in the face and a scuffle en *206 sued. Price was then subdued, arrested, handcuffed and taken to Charity Hospital where he was treated for his injuries. He was later transported to Central Lockup.
As the police were arresting Price, Mrs. Price arrived back at the scene to find her husband bleeding. Their son Christopher, a ten year old with Down’s syndrome, witnessed the altercation between his father and Poche from the car.
As a result of the altercation, Glenn and Debra Price filed suit individually and on behalf of their minor son Christopher against Poche, Killeen, the Louisiana Department of Transportation and Development (DOTD) and the MRBA. In their petition seeking compensatory and punitive damages, plaintiffs alleged violations of their civil rights pursuant to 42 U.S.C. Section 1983, and claims for assault and battery, malicious prosecution, negligence and intentional infliction of emotional distress.
The allegations against the DOTD and the MRBA were tried before the district court judge and the allegations against Poche were tried before a jury. During the trial, Killeen was dismissed as a defendant.
The jury returned a verdict for plaintiffs which was made the judgment of the trial court, awarding plaintiffs a total of $13,-000.00 in compensatory damages ($3,500.00 to Glenn Price, $3,500.00 to Debra Price and $6,000 to Christopher Price), $200,-000.00 in punitive damages and attorney’s fees in the amount of $15,000.00, in addition to court costs and interest.
The trial judge entered his judgment against the MRBA, awarding plaintiffs a total of $31,500.00 ($19,500.00 to Glenn Price, $4,500.00 to Debra Price and $2,500.00 to Christopher Price).
Plaintiffs, Poche and the MRBA have appealed.
The following issues have been raised on appeal:
1) Whether the trial court erred in awarding plaintiffs’ punitive damages;
2) Whether the trial court erred in finding the MRBA liable to plaintiffs;
3) Whether the trial court erred in refusing plaintiffs jury interrogatory on the issue of damages;
4) Whether the damages awarded plaintiffs are excessive and contrary to law;
5) Whether the trial court erred casting the Louisiana DOTD and the MRBA liable in solido for only a portion of the compensatory damages awarded plaintiffs; and
6) Whether the trial court erred in assessing attorney’s fees against officer Poche alone.
In rendering judgment against the DOTD and MRBA, the trial judge gave the following Reasons for Judgment:
The Court fully embraces that the tort of Mark Poche should be assessed against the Mississippi River Bridge Authority and the Louisiana Department of Transportation and Development (respectively, “MRBA” and “LDTD”). The testimony of the independent witnesses, Messrs. Hall and Taylor, reinforces the plaintiffs’ version of the facts. The MRBA and LDTD had knowledge of Poche’s tendency to lose his temper as early as 22 April 1979 (Exhibit 2). His continued employment demonstrates the necessary link to assess liability to the MRBA and LDTD.
The Court finds general and special damages of Glenn Price to be $19,500.00, of Debra Price to Be $4,500.00, and of Christopher Price to be $7,500.00. The length of Mr. Price’s pain and suffering from the broken nose is not that extensive, and given the mandates of Lejuene [Lejeune ] v. Rayne Branch Hospital, 557 [556] So.2d 559, the Court feels that most of Ms. Price’s and Christopher’s damages relate to special damages for psychological treatment.
The Court determined that Smith v. Wade, 103 S.Ct. 1625 [461 U.S. 30, 75 L.Ed.2d 632] (1983) had effectively overruled Ricard v. State, 390 So.2d 882 (La.1980) and thus charged the jury on punitive damages pursuant to 42 USC 1983. Punitive damages are not applicable or taxable against the state agencies, only against individuals.
*207 Judgment has been rendered in accordance with the verdict by the jury and this Court’s jurisprudential mandate to determine liability of the state entities.
On appeal, defendant Poche argues the trial court erred in awarding plaintiffs punitive damages. Relying on the Louisiana Supreme Court’s holding in Ricard v. State, 390 So.2d 882 (La.1980), Poche contends that punitive or exemplary damages may not be awarded in a suit brought under 42 U.S.C. Section 1983 in Louisiana state courts. He also contends the trial judge erred in concluding that Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), effectively overruled Ricard v. State, supra. We agree.
In Ricard, the plaintiff brought suit pursuant to 42 U.S.C. Section 1983 against the State of Louisiana, the Department of Public Safety, Division of State Police, and Steve Jones, a state police trooper, after plaintiff allegedly received a beating following a routine traffic stop. Defendants then filed a motion for summary judgment seeking to dismiss the portion of plaintiff’s claim for punitive damages. The trial court granted the summary judgment and the Court of Appeal affirmed.
The Louisiana Supreme Court granted certiorari and concluded that, absent congressional intent to vest exclusive jurisdiction of federal claims in federal courts, state courts have concurrent jurisdiction to enforce rights under federal statutes and specifically, that an action for deprivation of civil rights under 42 U.S.C. Section 1983 may be maintained in state court. Justice Marcus, in writing for the court stated:
[we] are of the opinion that an application of our state law is proper in determining the availability of damages for a Sec. 1983 violation when the suit is brought in our state court system; therefore, our statutory provision on damages, La.Civ.Code art. 1934, as judicially construed, requires a denial of punitive or exemplary damages. Although Sec. 1983 has no remedial provisions, 42 U.S.C. Sec. 1988, a companion to Sections 1983, 1985 and 1986, provides that in the areas where federal law is unsuited or deficient in the provisions necessary to furnish suitable remedies or punish offenses against the law, a court must turn to the common law as modified and changed by the constitution and statutes of the forum state, as long as these are not inconsistent with the constitution and laws of the United States. In absence of remedial provisions in Sec. 1983, we should draw upon state substantive law to fashion an appropriate remedy for civil rights violations as long as it is not inconsistent with the constitution and laws of the United States.
In Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), in a Sec. 1983 suit brought in the federal district court in Louisiana, the Supreme Court was confronted with the issue of whether an executor could be substituted when plaintiff died, leaving no surviving parents, wife, children or siblings, or whether the action must be dismissed on the ground of abatement. The Court, relying on Sec. 1988, discerned a deficiency in federal law to the extent that it was silent on the issue of the survival of a Sec. 1983 action. The Court applied state law, finding nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of absolute survivorship. The Court noted:
A state statute cannot be considered “inconsistent” with federal law merely because the statute causes the plaintiff to lose litigation_[Sec. 1988] quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby. 436 U.S. at 593, 98 S.Ct. at 1997. (Emphasis omitted)
390 So.2d at 886.
Referring to LSA-C.C. art. 1934(3), the court concluded that punitive or exemplary damages may not be awarded in a suit brought in Louisiana courts under 42 *208 U.S.C. Section 1983.[1] Moreover, the court found that an award of compensatory damages will allow full and complete recovery to an injured party alleging deprivation of civil rights under 42 U.S.C. Section 1983 and therefore there is no need to introduce punitive damages, as compensatory damages will serve the same deterrent purpose.
In response to Poche’s arguments, the plaintiffs contend that the trial judge was correct in concluding Smith v. Wade, supra, overruled Ricard.
In Smith, the plaintiff, an inmate in a Missouri reformatory for youthful offenders, was harassed, beaten and sexually assaulted by other inmates. He brought suit under 42 U.S.C. Section 1983 in federal court against defendant, a guard at the reformatory, and others, alleging that his constitutional rights had been violated. Because of defendant’s qualified immunity as a prison guard from Section 1983 liability, the trial judge instructed the jury that plaintiff inmate could only recover if defendant guard was guilty of “gross negligence” or “egregious failure to protect” the plaintiff. The judge also charged the jury that it could award punitive damages in addition to actual damages if the guard’s conduct was shown to be “a reckless or callous disregard of, or indifference to, the rights or safety of others.” The trial court entered judgment on a jury verdict finding the defendant guard liable and awarding both compensatory and punitive damages. The Court of Appeal affirmed.
The United States Supreme Court granted certiorari and addressed the issue of “whether the District Court for the Western District of Missouri applied the correct legal standard in instructing the jury that it might award punitive damages under 42 U.S.C. Section 1983”. 461 U.S. at 32, 103 S.Ct. at 1627. It held that punitive damages are available in a proper case under Section 1983 and a jury may assess punitive damages in such a case when a defendant’s conduct involves reckless or callous indifference to the plaintiff’s federally protected rights, as well as when it is motivated by evil motive or intent.
The Court in Smith did not specifically address the issue of whether Missouri substantive law expressly prohibited or allowed an award for punitive damages in certain circumstances. Missouri substantive law allows punitive damages for conduct that is outrageous because of a defendant’s evil motive or reckless indifference to the rights of others. See Burnett v. Griffith, 769 S.W.2d 780 (Mo.1989). However, under Louisiana substantive law, absent express authorization by statute (i.e. LSA-C.C. arts. 2315.3 and 2315.4), punitive damages are not allowed in Louisiana Edmonds v. Boh Bros. Construction Company, 522 So.2d 1166 (La.App. 4th Cir.1988). For this reason, we find the trial judge erred in concluding that Smith v. Wade, supra overruled the Louisiana Supreme Court’s holding in Ricard v. State, supra. Hence, we find the trial judge erred in awarding plaintiffs punitive damages in the amount of $200,000.00. Accordingly, that part of the judgment is hereby reversed.
The second issue before us, raised on appeal by the defendants DOTD and the MRBA, is whether the trial court erred in finding the MRBA independently liable to plaintiffs.
In their petition for damages, plaintiffs allege their injuries “were directly and proximately caused by the gross negligence, malfeasance and dereliction of duty *209 of the Louisiana Department of Transportation and Development and the Mississippi River Bridge Authority in that they utterly failed adequately and properly to screen, hire, train, supervise and/or discipline these individual defendants and other members of the Mississippi River Bridge Authority police department,_”.
In order for the MRBA to be held liable independently from Poche’s liability under 42 U.S.C. Section 1983, the actions of the MRBA must be predicated upon “gross negligence” amounting to “conscious indifference” and there must be a pattern or practice of constitutional violations supporting the theory of gross negligence. Languirand v. Hayden, 717 F.2d 220 (5th Cir.1983). In the absence of evidence of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force, the MRBA cannot be held liable under Section 1983 for the negligence or gross negligence of its subordinate officers for failing to train or properly supervise the particular officer(s) in question. Languirand v. Hayden, id.
Evidence in the record relevant to the MRBA’s liability in its training, supervising and disciplining of Poche included its personnel file on Poche, and a file from the Jefferson Parish Sheriffs Office.
According to Poche’s personnel file, the MRBA initially employed Poche as a police officer on February 5, 1979. In a letter dated March 7, 1979, Poche was formally notified by the MRBA that he had been employed on a “probational appointment”, meaning that he was required to “serve a working test or trial period for six months during which time your supervisors will judge your work for satisfactory performance ...”.
On his first performance appraisal review on April 22, 1979 (for police officers on the force for four months or less), Poche had a “satisfactory” rating in categories of appearance, attitude, confidence and report writing. In the section of the report marked “Action Recommended to Employee for Improvement”, the evaluator wrote “Learn to control your temper in arrest situations.” After Poche’s probationary period had run, the MRBA evaluated Poche’s performance each year thereafter and issued a “Service Rating Report”. The reports for the years 1980 through 1987 stated:
You have performed the duties of your position in a manner which met or exceeded the standards established by this Department for your position.
While the performance of your duties is considered satisfactory or better, there are noted below any specific comments which I believe will be of interest to you.
followed by remarks from the evaluating supervisor. In the report from 1981, the supervisor commented “Could also improve in handling public.” The remarks in the Service Rating Reports for the other years were all positive.
The personnel file also shows that in July, 1981, Poche’s supervisor, Lt. Walter LeBlanc, prepared a form evaluating Poche’s performance for the purpose of a pay increase. Lt. LeBlanc stated “Officer has general knowledge of all Police Work; is capable of Functioning as a supervisor; The only problem the officer has at the present time is his inability to deal with the General Public on Stops; Officer does well when Supervisor is on scene.”
In 1985, Poche sought employment with the Jefferson Parish Sheriff’s Office. An interoffice memorandum included in its file on Poche indicates that eight complaints involving incidents of cursing, vulgarity, rudeness and poor attitude on the part of Poche had been filed with MRBA from 1980 to 1981. Also, a complaint had been filed with the U.S. Attorney’s Office in New Orleans alleging police brutality on the part of Poche in June 1985. However, a letter from U.S. Attorney John Volz to Thomas Short, the executive director of the MRBA, which was admitted into evidence, stated that the U.S. Attorney’s Office and the Civil Rights Division of the U.S. Justice Department had investigated the complaint and concluded that it was not prosecutable.
*210 As to Poche’s actual training, the evidence in the record indicates that at his initial hiring, Poche underwent firearms training and several months later underwent a one month training course at the police academy. The course was conducted by a ranking officer from the MRBA and the New Orleans Police Department, the police academy personnel and several FBI agents.
After reviewing the evidence, we find there is nothing to suggest that, prior to the incident in question, Poche had acted in an improper negligent manner so as to have caused injury to or endangered the life of any citizen. Further, there is no evidence that Poche or anyone on the MRBA police force lacked sufficient skill, training and experience to adequately perform the position he or she held or that the MRBA had any policy or custom of allowing unsupervised, unskilled, inadequately trained or inexperienced officers on routine patrol duty. There was simply an insufficient showing at trial to authorize imposition of Section 1983 liability on the MRBA.
In its petition for damages, plaintiffs also allege that the MRBA and the DOTD are liable to plaintiff under the doctrine of respondeat superior, as Poche was acting in the course and scope of his employment at the time of the altercation. We agree.
It is well settled that masters and employers are answerable for the damage caused by their servants in the exercise of the functions in which they are employed. LSA-C.C. art. 2320. A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other’s control or right to control. Blanchard v. Ogima, 215 So.2d 902, 906 (La.1968). In determining vicarious liability, the focus is on the employee’s general activity at the time of the accident rather than on the specific tortious conduct, and the fact that an act is forbidden or is done in a forbidden manner does not remove that act from the scope of employment. Jones v. Thomas, 426 So.2d 609 (La.1983); Lebrane v. Lewis, 292 So.2d 216 (La.1974).
There is no question that Officer Poche was on duty at the time of the altercation with the plaintiffs and was acting in the course and scope of his employment when he struck Glenn Price. For this reason, the MRBA and DOTD, as the employers of Poche, are vicariously liable for the damages sustained by Poche.
The third issue to be considered on appeal was raised by plaintiffs. They argue the trial court erred in refusing to allow the jury to consider plaintiff’s jury interrogatories on the issue of damages. Specifically, plaintiffs contend the jury was not allowed to award plaintiffs special, compensatory and punitive damages but rather only compensatory and punitive damages.
The record indicates that the jury interrogatory submitted by the trial judge asked the jury what amounts, if any, would it award to the individual plaintiffs for compensatory and punitive damages only. It did not request the jury to make an award for special damages, as the trial judge considered special damages as part of the compensatory damages. The record further indicates that plaintiff’s counsel failed to object to the submitted jury interrogatory when asked by the judge whether there were any objections to it.
It is well settled that the trial court has broad discretion in submitting and framing interrogatories to the jury. Egan v. Hullinghorst Industries, Inc., 537 So.2d 1226 (La.App. 4th Cir.1989.) Failure to raise a timely objection to jury interrogatories at trial precludes plaintiff from raising that issue on appeal. C.C.P. art. 1793; St. Pierre v. General American Transportation Corporation, 360 So.2d 595 (La.1978). Plaintiffs’ failure to object to the form of the jury interrogatories at the time of trial constitutes a waiver of that issue.
The fourth issue before us, raised by the defendants, is whether the damages awarded plaintiffs are excessive and contrary to the evidence and law. Defendant Poche does not contest the damages awarded Glenn Price but does contest the awards to Mrs. Price and Christopher Price. The *211 MRBA and DOTD contest the amounts awarded to each of the plaintiffs.
Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The initial inquiry must always be directed at whether the trial court’s award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact’s much discretion. It is only after an articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review for articulated reason be considered excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979).
As to Glenn Price, the trial judge awarded him $19,500.00 in special and general compensatory damages including the $3,500.00 awarded to him by the jury.
After reviewing the evidence in the record we do not find that the trial judge or jury abused its discretion in making the awards. The testimony at trial reveals that Poche punched Glenn Price in the face, causing him to bleed. Price was taken to Charity Hospital in New Orleans where the emergency room physician examined him. X-rays taken at that time revealed no facial or nose fractures but, according to the medical records, plaintiff suffered a facial hematoma around the left eye and contusions on the neck and shoulder. Although the trial judge found Price’s pain and suffering as a result of the beating was not extensive, the record clearly shows that Price suffered extreme humiliation, embarrassment, worry and inconvenience because of the incident. Besides the battery, he was verbally assaulted, arrested, handcuffed and taken to jail where he remained for several hours. In light of this, we do not find the trial court’s award to Glenn Price of general damages amounting to $19,500.00 to be an abuse of discretion.
Next we consider the damages awarded to Debbie Price and her minor son, Christopher. Unlike Glenn Price, neither Mrs. Price nor the child suffered physical injuries as a result of the incident. However, the trial judge awarded her $4,500.00 in compensatory damages, including $3,500.00 awarded to her by the jury, and he awarded Christopher $7,500.00, which included $6,000.00 awarded to him by the jury. Relying on the Louisiana Supreme Court Case of Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), the trial judge stated that the awards to Mrs. Price and her son related to special damage for psychological treatments.
In Lejeune, the Court held that the following four conditions must be met before a plaintiff can recover for emotional distress:
1) a plaintiff must either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim’s condition;
2) the direct victim of the traumatic injury must suffer harm that can reasonably be expected that one in the plaintiff’s position would suffer;
3) the emotional distress sustained must be both serious and reasonably foreseeable to allow recovery, well beyond simple mental pain and anguish;
4) involves the relationship between the claimant and the direct victim.
Defendants argue on appeal that plaintiffs, Mrs. Price and Christopher, have not met the first, second and third criteria set forth in Lejeune and, therefore, should not be allowed to recover damages for emotional distress. We disagree.
Although Mrs. Price did not actually witness the battering of her husband, she arrived back at the scene immediately thereafter and found him bleeding from the face. She witnessed his arrest and departure to Central Lockup. The arresting officers also threatened to arrest her. Additionally, Mrs. Price found her son crying hysterically after he had witnessed his father’s altercation with the officers. Mrs. Price testified at trial that as a result of the entire incident, she was no longer able to cross the Mississippi River Bridge. Due *212 to the emotional distress, her doctor prescribed Xanax for her.
Unlike his mother, Christopher actually saw Officer Poche strike his father. He also heard the verbal assaults and threats made by Poche and witnessed the officers arresting and taking his father away. Clearly, it is reasonably foreseeable that a minor child with Down’s syndrome who had witnessed such a traumatic event involving his father would suffer emotional distress beyond mere mental pain and anguish. There is ample evidence in the record to support this conclusion. After the incident, Christopher Price became violent and aggressive whenever he saw a police officer in uniform and has also experienced behavioral problems in school.
In support of their argument that the trial court erred in awarding Mrs. Price and Christopher Price compensatory damages, defendants cite the case of Thomas v. Schwegmann Giant Supermarket, 561 So.2d 992 (La.App. 4th Cir.1990). In the Thomas case, the Lejeune claims of two grandchildren who witnessed their grandmother’s detention and alleged abuse from shopping center security guards were disallowed. The Thomas case is clearly distinguishable from the instant case. There was no evidence presented in Thomas that the children suffered emotional distress. The only basis for the claim was the parents’ assertion that the two children experienced changes in their sleeping patterns as a result of their grandmother’s detention. As previously stated, the evidence indicates Christopher Price has undergone extreme changes in his behavior, becoming violent and aggressive. Based on the evidence in the record, we cannot say the trial court was clearly wrong in finding that Mrs. Price and Christopher have suffered severe emotional distress as a result of the incident and in awarding them special and general compensatory damages.
The fifth issue to be addressed on appeal is whether the trial court erred in casting the defendants DOTD and MRBA liable in solido for only a portion of the compensatory damages awarded the plaintiffs. Plaintiffs raised this issue arguing that as Poche’s employer the MRBA and DOTD should be held liable in solido with Poche for the entire amount of the compensatory damages awarded plaintiffs. The DOTD and MRBA, on the other hand, argue that the judgment must be clarified as it can be construed to allow plaintiffs double recovery. We agree.
Because we have found that the MRBA and DOTD, as the employers of Poche, are vicariously liable for the damages sustained by plaintiffs based on the doctrine of respondeat superior and C.C. art. 2320, we find the MRBA and DOTD are liable jointly, severally and in solido with Poche for the amount of general compensatory damages awarded plaintiffs by the trial judge, which includes the amounts awarded plaintiffs by the jury so as to preclude double recovery by plaintiffs of these amounts from the DOTD and MRBA.
The final issue to be addressed has been raised by defendant Mark Poche. Poche contends the trial judge erred in awarding plaintiffs $15,000.00 in attorney’s fees and assessing such fees against Poche only. We agree.
42 U.S.C. Section 1988 allows a prevailing party in a Section 1983 case to recover attorney’s fees. The statute reads in part:
In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title YI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs.
In Williams v. Thomas, 692 F.2d 1032 (5th Cir.1982), the Fifth Circuit Court ruled that a sheriff’s deputy was sued in his official capacity and, therefore, the County could be assessed attorney’s fees under Section 1988, as the deputy’s tortious conduct arose from the deputy’s official duties.
In the instant case, Officer Poche was acting in the course and scope of his employment when he battered Glenn Price. Under this circumstance we find the trial judge erred in not assessing attorney’s fees against all three defendants, Poche, the *213 MRBA and DOTD pursuant to 42 U.S.C. Section 1988.
Accordingly for the foregoing reasons we reverse the part of the trial court judgment awarding plaintiffs punitive damages. We amend the judgment to cast the defendants the MRBA and DOTD and Poche liable jointly, severally and in solido for all compensatory damages and the attorney’s fees.
We recast the judgment, for clarification, as follows:
IT IS ORDERED, ADJUDGED and DECREED that there be judgment herein:
(1) In favor of Glenn Price and against the Louisiana Department of Transportation and Development, the Mississippi River Bridge Authority and Mark P. Poche, jointly, severally and in solido in the sum of $19,500.00, together with legal interest from date of judicial demand.
(2) In favor of Debra Price and against the Louisiana Department of Transportation and Development, the Mississippi River Bridge Authority and Mark P. Poche, jointly, severally and in solido in the sum of $4,500.00, together with legal interest from date of judicial demand.
(3) In favor of Glenn Price, as administrator of the estate of his minor child, Christopher Price, and against the Louisiana Department of Transportation and Development, the Mississippi River Bridge Authority and Mark P. Poche, jointly, severally and in solido in the sum of $7,500.00, together with legal interest from date of judicial demand.
(4) In favor of Glenn Price, Debra Price, and Glenn Price, as administrator of the estate of his minor child, Christopher Price, and against the Louisiana Department of Transportation and Development, the Mississippi River Bridge Authority and Mark P. Poche, jointly, severally and in solido for attorney’s fees in the amount of $15,-000.00, together with legal interest from date of judicial demand.
In all other respects the judgment of the trial court is affirmed.
REVERSED IN PART; AMENDED IN PART, and AS AMENDED, AFFIRMED.
BARRY, J., concurs with reasons.
BARRY, J., concurring in the result.
The majority states: “We find there is nothing to suggest that, prior to the incident in question, Poche had acted in an improper negligent manner so as to have caused injury to or endangered the life of any citizen.” I disagree.
Mark Poche was hired in February, 1979 on a probationary basis. One month later the MRBA advised Poche to “learn to control your temper in arrest situations.” Only two months after being hired, the MRBA notified Poche that he “should strive to avoid confrontation with other officers on the watch. Could also improve in handling the public.” After being on the job five months, Poche’s supervisor noted “... the only PROBLEM the officer has at the present time is his inability to deal with the general public on stops_” (Emphasis added).
Despite such a horrendous beginning during his “probationary” period, apparently Officer Poche met the qualifications of MRBA for permanent employment. Officer Poche’s disposition didn’t get better. During the following several years Officer Poche was cited numerous times by citizens for his crude demeanor, i.e., rudeness and cursing. Importantly, he was also accused of brutality. His short temper, even with fellow officers, is noted in his MRBA file.
Contrary to the majority’s assertion that “there is nothing to suggest that, prior to the incident in question, Poche had acted in an improper negligent manner ... ”, the evidence leaves no doubt that Officer Poche was not competent to be trusted with a badge and gun. His inability to cope with the public surfaced too often and culminated in the attack on Glenn Price.
The evidence is sufficient to support imposition of 42 U.S.C. Section 1983 liability on the MRBA.
I note that the jury form failed to distinguish or allocate between special and compensatory damages. Apparently the jury *214 was confused when it was instructed to consider only compensatory and punitive damages. Plaintiffs did not object on the record and that assignment is waived.

. L.C.C. art. 1934(3) provided
Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
* * ⅜ * * *
The substance of C.C. art. 1934(3) of the Code of 1870 was amended and reenacted by Act 331 of 1984.